UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:26-cv-00126-CAS-KESx | | Date | June 3, 2026 |
|---|---|---|---|---|
| Title | Comite International Olympique et al. v. Xiamen Olymate Import and Export Co., Ltd. et al. | | | |

Present: The Honorable   CHRISTINA A. SNYDER

| Catherine Jeang | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:          Attorneys Present for Defendants:

Not Present                                        Not Present

**Proceedings:**       (IN CHAMBERS) - MOTION FOR PRELIMINARY INJUNCTION (Dkt. 50, filed on April 3, 2026)

## I.     INTRODUCTION

This case centers on allegations that defendants unlawfully exploited intellectual property relating to the Olympics by using the trademark OLYLIFE to market and sell health and wellness products.

On January 6, 2026, plaintiffs Comité International Olympique (a/k/a International Olympic Committee ("IOC")) and the United States Olympic and Paralympic Committee ("USOPC") (collectively the "Olympic Parties") filed this action against defendants Xiamen Olymate Import & Export Co., Ltd. (a/k/a Xiamen Olymate Import & Export Co., Ltd.), Oly Processing LLC, Olylife International Sdn. Bhd. (a/k/a Olylife International Sdn Bhd), Olylife International PTE. Ltd. (a/k/a Olylife International PTE Ltd), Olylife (Thailand) Co. Ltd., PT. Olylife International Indonesia, Olylife Limited, and Does 1-10 (collectively "OlyLife").  Plaintiffs assert ten claims against all defendants: (1) false association in violation of the Olympic and Amateur Sports Act ("OASA"), 36 U.S.C. § 220506(c)(4); (2) use of the Olympic name and Olympic symbols in violation of the OASA, 36 U.S.C. § 220506(c)(1)-(c)(3); (3) trademark infringement, 15 U.S.C. § 1114; (4) infringement of common law trademarks, unfair competition, false designation of origin, false association, and passing off, 15 U.S.C. § 1125(a); (5) federal dilution of famous marks OLYMPIC and OLYMPIAN, 15. U.S.C. § 1125(c); (6) trademark infringement under California common law; (7) trademark dilution, Cal. Bus. & Prof. Code § 14247; (8) unfair competition, Cal. Bus. & Prof. Code

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**              **'O'**

| Case No. | 2:26-cv-00126-CAS-KESx | Date | June 3, 2026 |
|---|---|---|---|
| Title | Comite International Olympique et al. v. Xiamen Olymate Import and Export Co., Ltd. et al. | | |

§§ 17200, et. seq.; (9) unfair competition under California common law; and (10) cybersquatting, 15 U.S.C. § 1125(d). Dkt. 1.

On April 3, 2026, plaintiffs filed the instant motion for a preliminary injunction. Dkt. 50 ("Mot."). On April 30, 2026, defendants filed an opposition. Dkt. 60 ("Opp"). On May 18, 2026, plaintiff filed a reply. Dkt. 62

On June 1, 2026, the Court held a hearing. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.    BACKGROUND

Attached to its motion, plaintiffs provide declarations of Anne-Sophie Voumand, Katie Bynum Aznavorian, and Keith Toms, along with exhibits. See dkt. 50. In opposition, defendants submitted declarations of Wang Siyi, Jack Conley, Luo Haocheng, Adeia Fazira, Che Fung (Samuel) Leung, Wang Yihan, Paul Hsuei, Cynthia R. Cohen, Robert A. Leonard, Valerie L. Makarewicz, Yee Jin Yeong, along with exhibits. See dkt. 60. In reply, plaintiff provided supplemental declarations of Keith Toms, Sarah Butler, Carlos Castro, Ryan Rabenold, and Karen Hays, along with exhibits. Dkts. 63-67.

### A.    The Olympic Parties' Rights

For 130 years, the IOC, with the help of the USOPC and other global members of the Olympic Movement,[1] has organized the Olympic Games, the world's preeminent international sporting competition that brings together athletes from around the world. See generally Voumard Decl. ¶ 11.

The IOC is the leader of the Olympic Movement. Mot. at 14. It works to build a better world through sport as the epicenter for collaboration between all Olympic stakeholders, including the athletes, the USOPC and other National Olympic Committees, and worldwide Olympic Partners. See Voumard Decl. ¶ 9. The USOPC

---

[1] The Olympic Movement is composed of three main constituents: the International Olympic Committee (IOC), the International Sports Federations (IFs) and the National Olympic Committees (NOCs). *International Olympic Committee*, OLYMPICS, https://www.olympics.com/ioc/faq/olympism-and-the-olympic-movement/what-is-the-olympic-movement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:26-cv-00126-CAS-KESx | Date | June 3, 2026 |
|---|---|---|---|
| Title | Comite International Olympique et al. v. Xiamen Olymate Import and Export Co., Ltd. et al. | | |

serves as both the National Olympic Committee and the National Paralympic Committee for the United States. The USOPC is responsible for training, entering, and funding Team USA and is the steward of the Olympic Movement in the United States. See Aznavorian Decl. ¶ 4.

Under the Olympic Charter, the IOC is the owner of all rights in and to the Olympic Games, including all rights relating to the organization, exploitation, and marketing of the Olympic Games (the "Olympic intellectual property"). See Voumard Decl., ¶¶ 4-5, 7, Ex. 1. The USOPC is responsible for preventing unauthorized use of any Olympic intellectual property in the United States. See Aznavorian Decl. ¶ 6. The IOC assigns legal ownership of certain intellectual property rights to empower the USOPC's enforcement efforts. See Voumard Decl. ¶ 8.

Through the OASA, Congress granted exclusive rights to the USOPC to commercially exploit designations relating to the Olympic Games, including the Olympic Rings symbol, the words "Olympic" and "Olympiad," "any combination or simulation of those words tending to cause confusion or mistake, to deceive, or to falsely suggest a connection" with any Olympic activity, and "any trademark, trade name, sign, symbol, or insignia falsely representing association with, or authorization by" the IOC or USOPC. See 36 U.S.C. § 220506.

The Olympic Parties also own numerous trademark registrations for marks associated with the Olympic Games, including the mark OLYMPIC, the Olympic Rings, and various OLYMPIC- and OLYMPIAN-formative marks (collectively the "Olympic Registered Marks"). See Dkt. 50-36, Ex. U. The Olympic Parties contend that they also own common law rights in the marks OLYMPIC, OLYMPIAN, the Olympic Rings, and—especially relevant to this dispute—the three-letter phrase "OLY" (the "Olympic Common Law Marks," and, collectively with the Olympic Registered Marks, the "Olympic Marks") because of plaintiffs' use of these marks in U.S. commerce. See Voumard Decl., ¶¶ 13-16; Aznavorian Decl. ¶ 7.

The Olympic Parties have robust licensing programs. See Voumard Decl., ¶ 18; Aznavorian Decl., ¶ 9. Due to the fame, prestige, and cachet of the Olympic Marks and the Olympic Games, the right to become an Olympic sponsor is highly sought after. Mot. at 15. Olympic sponsorship programs, including The Olympic Partner ("TOP") program, attract many of the world's largest, most successful, and most prestigious companies. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:26-cv-00126-CAS-KESx | | Date | June 3, 2026 |
|---|---|---|---|---|
| Title | Comite International Olympique et al. v. Xiamen Olymate Import and Export Co., Ltd. et al. | | | |

Sponsors, licensees, and other partners provide funding for the Olympic Games and the Olympic Movement in exchange for the authorization to identify themselves as "proud sponsors" of the Olympic Games, use certain Olympic Marks, and associate themselves and their products with the Olympics.  See Voumard Decl., ¶ 19; Aznavorian Decl., ¶¶ 10-12.  The Olympic Parties take great care in selecting and controlling authorized sponsor activities.  See Voumard Decl., ¶ 23.  Before accepting a sponsor, the Olympic Parties carefully determine whether the sponsorship relationship would be compliant with the ethical principles of the Olympic Movement and would advance the goals of Olympism.  See id.

The Olympic Parties have authorized licensees to use certain Olympic Marks in connection with a wide variety of goods and services in many different industries, including but not limited to electronics, household and personal care items, sporting equipment, cosmetics, sanitary goods, pharmaceuticals, e-commerce, accommodations, travel infrastructure, insurance, apparel, and finance, among others.  Mot. at 16; see Voumard Decl. ¶ 21.  Sponsors use the Olympic Marks in connection with the promotion and sale of their products in the United States and around the world.  See Voumard Decl. ¶¶ 20-21.  The Olympic Games and Olympic Movement are funded in material part through these sponsorships and licensing arrangements.  See Voumard Decl., ¶ 22.  The IOC distributes 90% of its revenue to organizations throughout the Olympic Movement to support the staging of the Olympic Games and to promote the worldwide development of sport.  See Voumard Decl. ¶ 23.  The USOPC also greatly depends on these sponsorships and licenses to fund Team USA and represent the United States at the Olympic Games.  See Aznavorian Decl., ¶ 11.  The Olympic Parties regularly enforce their statutory rights under the OASA.  See id. ¶ 8.

**B.     The OlyLife Business**

Defendant Xiamen Olymate Import & Export Co., Ltd. ("Xiamen Olymate") is a Chinese manufacturer of health and wellness products sold under the OlyLife brand, including pulsed electromagnetic field therapy devices, terahertz light wave devices, hydrogen-infusing water bottles, dietary supplements, air purifiers, smart eye massagers, and sanitary napkins.  Wang Siyi Decl. ¶ 4.  These products typically retail for several hundred to several thousand dollars, requiring significant purchaser investment and deliberation.  Makarewicz Decl. ¶ 2.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:26-cv-00126-CAS-KESx | Date | June 3, 2026 |
|---|---|---|---|
| Title | Comite International Olympique et al. v. Xiamen Olymate Import and Export Co., Ltd. et al. | | |

Defendants contend that the OlyLife mark was independently created by OlyLife International Sdn. Bhd. ("OlyLife Malaysia"). Yeong Decl. ¶¶ 9-11. Defendants contend that the name "Oly" was selected as a short, distinctive, and memorable syllable—not as an abbreviation of "Olympic"—and that the suffix "Life" was added to reflect the brand's focus on health and wellness and living a full, healthy life. Opp. at 3; Yeong Decl. ¶¶ 9-11. Defendants contend that they never intended for the OlyLife mark to suggest any connection with the Olympic Parties. Yeong Decl. ¶¶ 9-11.



Dkt. 50-17, Ex. B at 10 (an "OlyLife" mark used by defendants).



Dkt. 60-11, Ex. MAKA-1 (another "OlyLife" mark used by defendants' distributors).



Ex. MAKA-1 (OlyLife products available for sale on an Olylife distributor website).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:26-cv-00126-CAS-KESx | | Date | June 3, 2026 |
|---|---|---|---|---|
| Title | Comite International Olympique et al. v. Xiamen Olymate Import and Export Co., Ltd. et al. | | | |

By contrast, plaintiffs contend that defendants have associated the OlyLife brand to the Olympics, including by representing that "Oly" means "Olympics" and that "OlyLife passionately means live an Olympic Life!" Dkt. 50-16, Ex. A; Dkt. 50-17, Ex. B at 11; Dkt. 50-28, Ex. M. Plaintiffs argue that defendants have also stated in marketing materials that "the name OlyLife comes from the idea of living the Olympian lifestyle," and that the brand is "inspired by the Olympic spirit." Dkt. 50-19, Ex. D at 33; dkt. 50-21, Ex. F. Plaintiffs also argue that defendants further associate themselves and the OLYLIFE Mark with the Olympic Games, the Olympic Movement, and the Olympic Parties by using the Olympic Rings and Olympic Flag alongside defendants' OlyLife brand. Dkt. 50-18, Ex. C; dkt. 50-20, Ex. E; see also Exs. A, B, M. Plaintiffs further argue that defendants use images of Olympic athletes and Olympic sports, and that a slogan used by defendants—"Champion's Choice"—is intended to be a reference to the Olympic Games. See, e.g., Ex. C; Ex. F, Dkt. 50-21 at 41 ("everyone adores Olympic champions, and when they win, we sometimes shed tears of joy too!"); Ex. B at 10 ("Be The Olympic Champion In Life").



Ex. B at 11 (screenshot of marketing brochure, attributable to one or more defendants). See Opp. at 11.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:26-cv-00126-CAS-KESx | | Date | June 3, 2026 |
|---|---|---|---|---|
| Title | Comite International Olympique et al. v. Xiamen Olymate Import and Export Co., Ltd. et al. | | | |



Dkt. 50-20, Ex. E at 38 (screenshot of an OlyLife website, attributable to one or more defendants).  See Opp. at 11.



UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:26-cv-00126-CAS-KESx | Date | June 3, 2026 |
| --- | --- | --- | --- |
| Title | Comite International Olympique et al. v. Xiamen Olymate Import and Export Co., Ltd. et al. | | |

Dkt. 50-2, Ex. H at 74 (screenshot of Instagram post, attributable to one or more defendants). <u>See</u> Opp. at 11.

OlyLife Malaysia registered the OLYLIFE mark with the Intellectual Property Corporation of Malaysia on November 2, 2022. Yeong Decl. ¶ 8. Xiamen Olymate holds trademark registrations for OLYLIFE in 25 countries and several pending trademark applications for the OLYLIFE mark before the United States Patent and Trademark Office ("USPTO"). Makarewicz Decl. ¶ 3. The USPTO examining attorney has reviewed Xiamen Olymate's trademark registration applications and has approved the marks for publication. <u>See id.</u> Plaintiffs thereafter filed opposition proceedings before the Trademark Trial and Appeal Board, which remain pending. <u>Id.</u>

OlyLife products are sold through a multi-level marketing ("MLM") structure in which individual distributors sell defendants' products; the distributors are independent businesspersons, not employees or agents of defendants. Yeong Decl. ¶ 27; Conley Decl. ¶ 3; Hsuei Decl. ¶¶ 5-6; Leung Decl., ¶¶ 5-9. Defendant Oly Processing LLC processes U.S. orders and provides customer support but maintains no inventory; products ship directly from China. Conley Decl. ¶¶ 2-4. OlyLife Malaysia does not manufacture OlyLife products; it sells OlyLife-branded health and wellness products through its website and distributor network. Yeong Decl. ¶ 6. OlyLife Malaysia maintains its own bank accounts, separate from the bank accounts of all other OlyLife entities, and does not commingle its funds with the funds of any other OlyLife entity. Yeong Decl. ¶ 4. The remaining defendants—OlyLife (Thailand), PT. OlyLife International Indonesia, OlyLife International PTE. Ltd. (Singapore), and OlyLife Limited (Hong Kong)—are each separate legal entities with independent governance and finances, and none is a subsidiary of any other. Opp. at 4. Each foreign-market entity operates only within its own local jurisdiction, conducting distributor support, regulatory compliance, and product distribution under separate management and in accordance with local law. Wang Yihan Decl., ¶¶ 3–7; Luo Decl. (Singapore) ¶¶ 3–6; Luo Decl. (Thailand) ¶¶ 3–6; Fazira Decl. ¶¶ 3–6. The OlyLife defendants share no common ownership of distributor materials, no centralized marketing function, and no joint authority over each others'

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:26-cv-00126-CAS-KESx | | Date | June 3, 2026 |
|---|---|---|---|---|
| Title | Comite International Olympique et al. v. Xiamen Olymate Import and Export Co., Ltd. et al. | | | |

social-media accounts.[2]  Wang Siyi Decl., ¶¶ 5-9; Wang Yihan Decl. ¶¶ 3-7; Luo Decl. (Singapore) ¶¶ 3-6; Luo Decl. (Thailand) ¶¶ 3-6; Fazira Decl. ¶¶ 3-6.

## III.   LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  Winter, 555 U.S. at 20.  Accord Am. Trucking Ass'n, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009).  Alternatively, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the Winter test are also met."  All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1132 (9th Cir. 2011) (interpreting Winter and explaining that the "sliding scale" test for preliminary injunctive relief remains valid).  A "serious question" is one on which the movant "has a fair chance of success on the merits."  Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1421 (9th Cir. 1984).

A plaintiff seeking a preliminary injunction must show more than the "possibility" of irreparable injury; he must demonstrate that irreparable injury is "likely" in the absence of preliminary relief.  Winter, 555 U.S. at 22; Am. Trucking, 559 F.3d at 1052.  It is not enough that the claimed harm be irreparable—it also must be imminent. Caribbean Marine Servs. Co. v. Baldrige, 844 F.2d 668, 674 (9th Cir. 1988).  Conclusory affidavits are insufficient to demonstrate irreparable harm.  Am. Passage Media Corp. v. Cass Commc'ns, Inc., 750 F.2d 1470, 1473 (9th Cir. 1985).

---

[2] Defendants state that: "OlyLife Singapore, Thailand and Indonesia are separately preparing a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), and join this Opposition without waiver of, and expressly preserving, that defense." Opp. at 5.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**           **'O'**

| Case No. | 2:26-cv-00126-CAS-KESx | | Date | June 3, 2026 |
|---|---|---|---|---|
| Title | Comite International Olympique et al. v. Xiamen Olymate Import and Export Co., Ltd. et al. | | | |

## IV.  DISCUSSION

Plaintiffs seek, among other requests, a preliminary injunction "enjoining and restraining all [d]efendants, or any of their agents or affiliates, from[] [u]sing in any manner the trademarks and trade names OLYLIFE, OLY NATION, OLY PROCESSING, any trademark or trade name that begins with or incorporates the term "OLY," or any simulations or colorable variations of the foregoing (collectively "OLYLIFE and OLY-formative Marks" or "OlyLife Marks")" on their products and advertisements.  Mot. at 2-3.  Plaintiffs further seek to enjoin defendants from "[m]aking any statement or representation, whether oral or in writing, claiming or implying that any [d]efendant, or their products or services, are connected, affiliated, associated with, authorized by, or a sponsor of the Olympic Games, the Olympic Parties, or the Olympic Movement."  Id. at 3.

### A.    Likelihood of Success on the Merits

#### 1.    OASA Claims

The OASA provides, in relevant part:

(c) Civil action for unauthorized use. … [The USOPC] may file a civil action against a person for the remedies provided in the [Lanham] Act … if the person, without the consent of the [USOPC], uses for the purpose of trade, to induce the sale of any goods or services, or to promote any theatrical exhibition, athletic performance, or competition--

…

(1) the symbol [of the International Olympic Committee, consisting of 5 interlocking rings …]

…

(3) the words ["Olympic", "Olympiad", …], or any combination or simulation of those words tending to cause confusion or mistake, to deceive, or to falsely suggest a connection with the [USOPC] or any Olympic …. Games activity; or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:26-cv-00126-CAS-KESx | Date | June 3, 2026 |
|---|---|---|---|
| Title | Comite International Olympique et al. v. Xiamen Olymate Import and Export Co., Ltd. et al. | | |

(4) any trademark, trade name, sign, symbol, or insignia falsely representing association with, or authorization by, the International Olympic Committee, … or the [USOPC].

36 U.S.C. § 220506 (alterations in original).

Plaintiffs argue that they are likely to succeed on their OASA claims (claims one and two) because the OLYLIFE and OLY-formative Marks are a simulation of the word "Olympic" tending to falsely suggest a connection with the Olympics, in violation of 36 U.S.C. § 220506(c)(3); the OLYLIFE and OLY-formative Marks falsely represent an association with, or authorization by, the Olympic Parties, in violation of 36 U.S.C. § 220506(c)(4); and OlyLife has used the protected "Olympic" and Olympic Rings marks, in violation of 36 U.S.C. § 220506(c)(1). Mot. at 20-23. Plaintiffs argue that defendants have used the OlyLife Marks for "the purpose of trade," in violation of the OASA. Id. at 20.

In opposition, defendants argue that plaintiffs' evidence of defendants' alleged violation of the OASA "is largely misattributed." Opp. at 10. Defendants argue that "[t]he materials offered [by plaintiffs to show a violation of] § 220506(c)(1) and (c)(3) (Exhibits A, C, D, K, M, T) were created by [defendants'] independent third-party distributors, not by the OlyLife Defendants." Id. Defendants argue that "OlyLife's distributors are independent businesspersons, not employees or agents [of defendants]. Each distributor agrees to the OlyLife Policies & Procedures as a condition of membership, which expressly provide that distributors are independent contractors with no authority to bind any OlyLife entity. … Far from encouraging the challenged conduct, OlyLife's written policies[3] expressly prohibit it." Id. (citing Yeong Decl. ¶ 29). Defendants contend that such "policies negate any inference of inducement or ratification." Id. at 11. Defendants argue that "Plaintiffs offer no evidence that any

---

[3] Section 1.10.5 of OlyLife's Policies & Procedures prohibits distributors from "promot[ing], publiciz[ing], or broadcast[ing] any video or audio of any kind that relates to the product in any form of media, without written consent from [the] company." Yeong Decl., Ex. MALA-4 § 1.10.5. Section 1.18 provides for termination of distributors who engage in "[u]nauthorized printing, publishing and usage of the Company's marketing materials" or "[e]xaggerated and untrue publicity of Company products." Id., Ex. MALA-4 § 1.18(d)-(e).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**　　　　　**'O'**

| Case No. | 2:26-cv-00126-CAS-KESx | | Date | June 3, 2026 |
|---|---|---|---|---|
| Title | Comite International Olympique et al. v. Xiamen Olymate Import and Export Co., Ltd. et al. | | | |

OlyLife Defendant had specific, contemporaneous knowledge of the particular distributor materials cited in the Motion, much less that Defendants exercised direct control over those materials' creation or dissemination." Id. at 11. They argue that "Plaintiffs' attribution theory rests on an attorney declaration that establishes no foundation, authorship, control, or agency," and that "[s]worn declarations from the distributor-creator (Leung Decl., ¶¶ 11, 15, 18-32), the OlyNation Team organizer (Hsuei Decl., ¶¶ 6-13), and from the OlyLife Defendants (Yeong Decl., ¶¶ 20-26, 30; Conley Decl., ¶¶ 9-10) confirm [the] independent third-party origin" of the violative marks that plaintiffs attribute to defendants. Id.

Defendants concede that certain OlyLife marketing materials in violation of §§ 220506(c)(1) or (c)(3) of OASA—Exhibits B, E, F, H—are attributable to certain OlyLife defendants, but they argue that such materials have now been removed or withdrawn.[4] Id. at 11-12.

Defendants argue that the OLYLIFE mark itself does not violate the OASA. Id. at 12. They argue that the OLYLIFE mark does not violate § 220506(c)(1) because the "OLYLIFE mark contains no Rings, no five-circle device, and no Olympic emblem." Id. at 12. They further argue that the OLYLIFE mark does not violate § 220506(c)(3) because: "Oly" is a common-language fragment, not a "simulation" of "Olympic; the OASA's enumeration of specific, enumerated terms forecloses extension to unenumerated fragments like "Oly"; making the use of the letters "Oly" actionable would make "Olympus," "Olympiad," and countless other "Oly-" formative words actionable that were never thought to be actionable; the "OLYLIFE" mark does not falsely suggest

---

[4] Defendants state that "[o]nce on notice, Defendants removed all references to the Olympic Rings, the Olympic Flag, the Olympic spirit, and the word "Olympic" from corporate-controlled websites and social-media accounts; withdrew marketing materials containing Olympic-referencing language; issued directives to all distributors to cease using any Olympic-related imagery, symbols, or language; and implemented an ongoing compliance review process. These steps were substantially completed before Plaintiffs filed their Motion on April 3, 2026. Defendants are willing to consent to a court order prohibiting use of the word "Olympic," the Olympic Rings, and any explicit references to the Olympic Games, and to add prominent disclaimers of non-affiliation." Opp. at 8 (citations omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:26-cv-00126-CAS-KESx | Date | June 3, 2026 |
|---|---|---|---|
| Title | Comite International Olympique et al. v. Xiamen Olymate Import and Export Co., Ltd. et al. | | |

an Olympic connection; and defendants' expert has opined, based on an empirical survey she conducted, regarding the absence of any customer confusion or association between the Olympics and the "OLYLIFE" brand in the United States. Opp. at 9-15. Moreover, defendants argue that the World Olympians Association's use of the "OLY" title to refer to Olympic athletes does not protect this three-letter phrase from use in commerce. Id. at 15-16. They further argue that the OlyLife Marks themselves do not falsely represent an association with, or authorization by, any Olympic entity. Id. at 16.

In reply, plaintiffs argue that the "OLYLIFE" mark is a simulation of the protected word "Olympic" because defendants conceived "OLYLIFE" as a short-form phrase to mean "Olympic Life" and that defendants have and still continue to promote an explicit connection between the concepts in their marketing materials. Reply at 16. Plaintiffs argue that "while [use of the prefix] 'Oly' is not illegal *per se*, OLYLIFE violates the OASA because it '[p]assionately means live an Olympic Life!' and thus does much more than 'tend' to falsely suggest an Olympic connection." Id. at 18 (citing Ex. B, Dkt. 50-17 at 11). Plaintiffs further argue that defendants' expert survey indicating little to no customer confusion regarding the OLYLIFE brand should be given no weight because it does not replicate actual marketplace conditions, given that the survey tests consumers' associations with the OLYLIFE mark based on defendants' U.S.-facing website, whereas OlyLife products are sold via MLM distributors who market through social media, word-of-mouth, and small-group presentations.[5]

The Court finds that plaintiffs have demonstrated that the OlyLife defendants have likely violated the OASA by using the Olympic Rings and the word "Olympic" in marketing their products and by using insignia that falsely represent an association with, or authorization by Olympic entities. See Exs. B, E, F, H; 36 U.S.C. §§ 220506(c)(1) or

---

[5] Plaintiffs argue that defendants' expert survey suffers from additional flaws, including that it improperly primes survey respondents away from associations with the Olympics by asking respondents whether "any other company or business" is affiliated with the "OLYLIFE" page despite that the Olympics is not considered by consumers as a company or business. Reply at 21. Moreover, plaintiffs argue that the survey's respondent population is both over and underinclusive because it contains "vague screening questions and exclude[es] consumers who would purchase from [defendants'] distributors or [those] who might have household incomes under $100,000." Id. at 21.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:26-cv-00126-CAS-KESx | Date | June 3, 2026 |
|----------|------------------------|------|--------------|
| Title | Comite International Olympique et al. v. Xiamen Olymate Import and Export Co., Ltd. et al. | | |

(c)(3). Such unlawful advertising is attributable to the OlyLife defendants, a fact that defendants concede. Opp. at 11. The Court need not address other potential violations of the OASA by defendants' third-party distributors because plaintiff has established a likelihood of success on their OASA claim based on defendants' own marketing materials.

With respect to the OLYLIFE and OLY-formative Marks themselves, the Court finds that defendants' use of such marks, when stripped of any Olympic-specific reference, would not likely violate the OASA. The OASA prohibits the unauthorized use of the words "Olympic," "Olympiad," "Citius Altius Fortius," "Paralympic," "Paralympiad," "Pan-American," "Parapan American," and "America Espirito Sport Fraternite," or "any combination of those words." See 36 U.S.C. § 220506(a)(4), (c)(3). "OLY" is not one of them; nor is "OLY" a combination of these words.

The OASA also prohibits the unauthorized use of "any combination or simulation of [the above] words tending to cause confusion or mistake, to deceive, or to falsely suggest a connection with the [USOPC] or any Olympic … Games activity." 36 U.S.C. § 220506(c)(3). Because the term "simulation" is not defined in the OASA, the Court turns to the dictionary: A "simulation" is "[a]n assumption of an appearance that is feigned, false, or deceptive." *Simulation*, Black's Law Dictionary (12th ed. 2024). The Court finds that the OLYLIFE and OLY-formative Marks themselves, when stripped of any Olympic-specific reference, do not likely constitute a "simulation" of the words "Olympic" or "Olympiad" that tend to cause confusion or mistake, to deceive, or to falsely suggest a connection with the Olympics. The only connection between the OLYLIFE and OLY-formative Marks and the words "Olympic" or "Olympiad" are the three letters "OLY." The OlyLife Marks' use of such letters alone cannot establish a connection with the Olympics because "OLY" appears in everyday English words, proper names, place names, and commercial marks that have no connection to and are not likely to cause confusion with the Olympic Games—an international *athletic* competition—or any Olympic entity. For example: Olympia Group (an investment company), Olympia Sports (an American sporting good retail company), Olympus (camera brand), Mt. Olympus (a neighborhood in the Hollywood Hills area of Los Angeles), and Olyphant (a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:26-cv-00126-CAS-KESx | Date | June 3, 2026 |
|---|---|---|---|
| Title | Comite International Olympique et al. v. Xiamen Olymate Import and Export Co., Ltd. et al. | | |

surname), among others.[6]  Moreover, the Court finds that the use of such marks on defendants' various health and wellness devices and products, without more, are not likely to cause confusion or falsely suggest a connection between defendants and the Olympics, an international athletic competition.

This conclusion is supported by the empirical survey conducted by defendants' expert, who found that of 204 qualified U.S. consumers shown OlyLife's principal U.S.-facing commercial website, none mentioned or associated the brand with the Olympics, the IOC, the USOPC, Olympic athletes, or any Olympic sponsor.  Dkt. 60-9, Cohen Rpt. §§ V-VI.  Despite its potential flaws, see Reply at 20-21, the survey nonetheless supports plaintiffs' contention that the "OLYLIFE" mark itself is not likely a simulation of protected Olympic words tending to cause confusion or mistake, to deceive, or to falsely suggest a connection with the Olympic parties.  Nor is it likely that "OLYLFE," by itself, constitutes a mark that falsely represents an association with the Olympic parties.

Accordingly, while the Court concludes that the OlyLife defendants have likely violated the OASA through their use of protected Olympic symbols and marks in the course of their business, the OLYLIFE and OLY-formative Marks by themselves do not likely violate the OASA.

   2. <u>Trademark Infringement and Unfair Competition</u>

Plaintiffs argue that they are likely to succeed on their trademark infringement and unfair competition claims—claims three (trademark infringement under 15 U.S.C. § 1114), four (false designation of origin under 15 U.S.C. § 1114), six (trademark infringement under California common law), eight (unfair competition under Cal. Bus. & Prof. Code § 17200), and nine (unfair competition under California common law)—which they contend are subject to the same "likelihood of confusion" test under Ninth Circuit precedent.  Mot. at 23.  Plaintiffs argue that numerous factors indicate a

---

[6] The Court does not opine that the use of the "OLY" prefix, when combined with other letters or used in certain contexts, cannot violate the OASA.  <u>See United States Olympic Comm. v. Olymp-Herrenwaschefabriken Bezner Gmbh & Co.</u>, 224 U.S.P.Q. (BNA) 497 (T.T.A.B. July 20, 1984) (finding that a likelihood of confusion exists from contemporaneous use of "OLYMP" and "OLYMPIC" marks when placed on similar goods like athletic wear or sportswear).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:26-cv-00126-CAS-KESx | | Date | June 3, 2026 |
|---|---|---|---|---|
| Title | Comite International Olympique et al. v. Xiamen Olymate Import and Export Co., Ltd. et al. | | | |

likelihood of confusion: the Olympic Marks have unparalleled recognition in the market; the parties' goods are related because consumers are accustomed to seeing a wide array of officially licensed goods and services; the Olympic Marks have similar sight, sound, and meaning to OLYLIFE and OLY-formative Marks because they share the dominant beginning "OLY" prefix; defendants knowingly and intentionally adopted a mark similar to the Olympic Marks; OlyLife customers and MLM participants have exhibited confusion; defendants' business is likely to expand and compete further with the Olympic Parties' licensees; and the parties' marketing channels are similar as both target the same nationwide class of consumers.  Mot. at 24-29.

In opposition, defendants argue that the likelihood of confusion factors do not support plaintiffs' infringement claims.  Defendants argue that while the word "Olympic" and the Olympic Rings symbol are strong marks, their strength does not extend to every three-letter substring extracted from it; that "OlyLife" does not have a similar sight, sound, and meaning to "Olympic"; that the parties' goods are not related because plaintiffs organize international athletic competitions and license major commercial sponsors, whereas defendants sells niche wellness technology products; that an empirical survey confirms that customers do not confuse the "OlyLife" brand with the Olympics; that the parties operate through fundamentally different marketing channels; and that once defendants' independent third-party distributors' marketing materials are excluded, there is little evidence of defendants' intent to infringe.  Opp. at 17-22.

In reply, plaintiffs argue that defendants' distributors are actually confused and are actively confusing the marketplace through their marketing.  See Reply at 13-16.

"To prevail on a claim for trademark infringement under the Lanham Act, a plaintiff must prove: (1) ownership of a valid trademark; (2) use of the mark without its consent; and (3) that such use is likely to cause confusion."  Credit One Corp. v. Credit One Financial, Inc., 661 F.Supp.2d 1134, 1137 (C.D. Cal. 2009); see also Rearden LLC v. Rearden Commerce, Inc., 683 F.3d 1190, 1202 (9th Cir. 2012) ("To prevail on its Lanham Act trademark claim, a plaintiff must prove: (1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion." (quotation marks omitted)); 15 U.S.C. § 1114(1).  "The elements of a federal unfair competition claim for false designation of origin of services under section 43(a) of the Lanham Act is identical to the federal trademark infringement claim, with the exception that the trademark need not be registered."  Century 21 Real

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:26-cv-00126-CAS-KESx | Date | June 3, 2026 |
|---|---|---|---|
| Title | Comite International Olympique et al. v. Xiamen Olymate Import and Export Co., Ltd. et al. | | |

Est. LLC v. All Pro. Realty, Inc., No. CIV. 2:10-2751, 2011 WL 221651, at *10 (E.D. Cal. Jan. 24, 2011) (citations omitted). The same "ultimate test" governs both federal claims: "whether the public is likely to be deceived or confused by the similarity of the marks." Century 21 Real Estate v. Sandlin, 846 F.2d 1175, 1178 (9th Cir. 1998). "With respect to California law claims for trademark infringement and unfair competition, courts apply the same likelihood of confusion test applied to a federal trademark infringement claim." Century 21 Real Est. LLC, 2011 WL 221651, at *10.

"'The UCL prohibits, and provides civil remedies for, unfair competition,' which it defines as 'any unlawful, unfair or fraudulent business act or practice.' … As unfair competition includes 'unlawful' business practices, the UCL 'permits violations of other laws to be treated as unfair competition that is independently actionable.'" Cody v. SoulCycle Inc., No. CV156457GHKJEMX, 2016 WL 4771392, at *10 (C.D. Cal. Jan. 11, 2016) (citations omitted). However, "a claim under the UCL need not be based upon violation of another law as 'a practice may be deemed unfair even if not specifically proscribed by some other law.'" Blennis v. Hewlett-Packard Co., No. C 07-00333 JF, 2008 WL 818526, at *6 (N.D. Cal. Mar. 25, 2008) (citation omitted). "The common law tort of unfair competition … provided 'an equitable remedy against the wrongful exploitation of trade names and common law trademarks that were not otherwise entitled to legal protection." Sybersound Recs., Inc. v. UAV Corp., 517 F.3d 1137, 1153 (9th Cir. 2008) (quoting Bank of the W. v. Superior Court, 2 Cal.4th 1254, 1263 (1992)).

The Court finds that plaintiffs are likely to succeed on their infringement claims under the Lanham Act. "We employ an eight factor test ('Sleekcraft factors') in determining the likelihood of confusion. These factors include: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines." Jada Toys, Inc. v. Mattel, Inc., 518 F.3d 628, 632 (9th Cir. 2008) (citations omitted). The test for likelihood of confusion is "pliant": "Some factors are much more important than others, and the relative importance of each individual factor will be case-specific." Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp., 174 F.3d 1036, 1054 (9th Cir. 1999). Courts should "regularly appl[y] all the relevant factors … [and] a final likelihood of confusion determination may rest on those

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:26-cv-00126-CAS-KESx | | Date | June 3, 2026 |
|---|---|---|---|---|
| Title | Comite International Olympique et al. v. Xiamen Olymate Import and Export Co., Ltd. et al. | | | |

factors that are of the most relative importance in any particular case." Jada Toys, 518 F.3d at 632–33.

Here, consideration of the Sleekcraft factors indicate that defendants' conduct, in using their OlyLife Marks in conjunction with the Olympic Marks, is likely to cause confusion. As to the first factor, it is undisputed that the Olympic Marks are distinctive and renowned. As to the second, the parties' goods are sufficiently related such that consumers encountering OlyLife's health and wellness products marketed using the Olympic Marks are likely to assume they are endorsed by the Olympic Parties. As to the fourth factor, plaintiffs have presented evidence that OlyLife customers and MLM participants have exhibited confusion as a result of defendants' marketing conduct. See Ex. O (including "#OlyLife #OlympicLife"); see also Ex. P ("OLYLIFE - OLYMPIC LIFE …. It stands for Olympic life … and that's exactly what it unlocks"). As to the seventh factor, the record indicates that defendants intentionally conceived of—or at least marketed—their OlyLife Marks to exploit the reputation and goodwill of the Olympics and the Olympic Marks; this intent is reflected by defendants' own marketing materials, which state that "OlyLife Passionately means live an Olympic Life," Ex. B at 11, and that "OlyLife is derived from 'Living the Olympian lifestyle.'" Ex. F at 41. See also Ex. E at 37-38 ("Our range of products and equipment are designed to help you live a healthy, beautiful, and fulfilling life, just like an Olympic athlete. We are … guided by our strong beliefs as Olympians."); Ex. H. These factors sufficiently indicate that defendants' conduct is likely to cause confusion. Because plaintiffs are likely to succeed on their infringement claims, they are also likely to succeed on their unfair competition claims under the UCL and California common law that are predicated on defendants' infringement.[7]

However, the Court finds that the use of the OlyLife Marks, by themselves, does not constitute trademark infringement because the marks are not likely to cause customer confusion. The only two Sleekcraft factors that support a likelihood of confusion determination, with respect to the OlyLife Marks themselves, are the first and seventh factors. As discussed, the Olympic Marks are strong, and the evidence of defendants' intentional infringement of the Olympic Marks is clear. However, the remaining

---

[7] The Court notes that defendants do not appear to dispute that they have infringed plaintiffs' protected marks. See opp. at 17-22.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:26-cv-00126-CAS-KESx | | Date | June 3, 2026 |
|---|---|---|---|---|
| Title | Comite International Olympique et al. v. Xiamen Olymate Import and Export Co., Ltd. et al. | | | |

factors—importantly the fourth—are either neutral or counsel against a finding that the OlyLife Marks, stripped of any Olympic reference, are likely to cause customer confusion.  As to the second factor, while there may be some overlap between the goods to which the Olympic Parties have licensed the Olympic Marks and defendants' health and wellness products, such overlap is minimal.  The Olympic Marks are licensed to advertise household and personal care items, see Mot. at 16, whereas defendants sell niche health wellness technology products, see Ex. MAKA-1.  As to the third factor, "OLYLIFE, OLY NATION, OLY PROCESSING" do not closely resemble or sound like "Olympic"; nor do the OlyLife Marks have similar designs or color schemes compared to the Olympic Marks.  As discussed, the "OLY" prefix appears across a broad range of unrelated commercial marks—e.g., Olympus, Olympia—and consumers may distinguish among them by reference to their suffixes and overall presentation.  On the other hand, because defendants appear to have conceived of and have marketed "OlyLife" to mean "Olympic Life," the court does not give much weight to this factor. The fifth and sixth factors favor defendants.  Plaintiffs use their marks to advertise the Olympic Games, an international athletic competition, and to license their marks to commercial sponsors, whereas defendants sell health and wellness technology products.  While the Olympic Marks are licensed to sell electronics, household and personal care items, sporting equipment, cosmetics, sanitary goods, pharmaceuticals, e-commerce, accommodations, travel infrastructure, insurance, apparel, and finance, Mot. at 16, defendants' health technology products, by contrast, are sold primarily via multi-level marketing, cost hundreds to thousands of dollars, and require greater customer deliberation and investment.  Opp. at 18, 20.  The eighth factor, likelihood of expansion of the product lines, is neutral.  While plaintiffs have offered some evidence that the OlyLife defendants may possibly expand their product offerings[8] to compete with goods and products licensed to bear the Olympic Marks, see Ex. Q, the use of the OlyLife Marks by themselves is not infringing given their dissimilarity to the Olympic Marks.  C

Importantly, with respect to the OlyLife Marks themselves, the fourth factor strongly favors defendants.  Plaintiffs have made no showing that the OlyLife Marks themselves have actually caused customer confusion; plaintiffs' evidence of actual confusion is predicated on defendants' use of the OlyLife Marks *in conjunction* with the

---

[8] OlyLife has recently expanded its product offerings to include sanitary napkins, topical ointments, and handled massage devices.  See Ex. Q.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:26-cv-00126-CAS-KESx | | Date | June 3, 2026 |
|---|---|---|---|---|
| Title | Comite International Olympique et al. v. Xiamen Olymate Import and Export Co., Ltd. et al. | | | |

Olympic Marks. Such evidence does not indicate that the OlyLife Marks themselves are actually confusing. By contrast, defendants have made a strong showing that the OlyLife Marks themselves have not caused actual confusion and are not likely to. Defendants offer an empirical survey conducted by defendants' expert who found that of 204 qualified U.S. consumers shown OlyLife's principal U.S.-facing commercial website, none mentioned or associated the brand with the Olympics, the IOC, the USOPC, Olympic athletes, or any Olympic sponsor. Dkt. 60-9, Cohen Rpt. §§ V-VI. The Court, having considered the Sleekcraft factors as a whole, finds that plaintiffs have not met their burden of establishing that the use of the OlyLife Marks themselves is likely to cause customer confusion.

Accordingly, while plaintiffs are likely to succeed on their trademark infringement and derivative unfair competition claims based on defendants' marketing their products using the Olympic Rings or the word "Olympic," plaintiffs are not likely to succeed on such claims based solely on defendants' use of the OlyLife Marks.

### 3. Trademark Dilution Claims

Plaintiffs argue that they are likely to succeed on their trademark dilution claims—claims five (trademark dilution under 15 U.S.C. § 1125(c)) and seven (trademark dilution under Cal. Bus. & Prof. Code § 14247)—because (1) the Olympic Marks are famous and distinctive; (2) defendants uses the mark in commerce; (3) defendants' use began after the mark became famous; and (4) defendants' use of the mark is likely to cause dilution by blurring or dilution by tarnishment. Mot. at 29-32. Plaintiffs argue that, given the similarity between defendants' marks and the Olympic Marks and given defendants' efforts to reinforce such similarities in their marketing, customers are likely to associate defendants' products with the Olympics. Id. at 31. Regarding dilution by tarnishment, plaintiffs argue that "the public perception that the Olympics are endorsing an MLM business model will damage the reputation of the Olympics." Id. at 32.

In opposition, defendants argue that plaintiffs' dilution by blurring claim fails because a consumer who encounters the OLYLIFE mark would not associate the mark with the Olympics. Opp. at 22. Defendants further argue that plaintiffs' dilution by tarnishment claim fails because even if consumers associate OLYLIFE with the Olympics, plaintiffs offer no evidence that OlyLife products are "shoddy," "unwholesome" or of a "degrading quality"—that the products are defective, dangerous,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**              **'O'**

| Case No. | 2:26-cv-00126-CAS-KESx | Date | June 3, 2026 |
|---|---|---|---|
| Title | Comite International Olympique et al. v. Xiamen Olymate Import and Export Co., Ltd. et al. | | |

or have generated consumer complaints, adverse health outcomes, or regulatory enforcement actions that would tarnish the Olympic Marks. Id. at 23. Defendants argue that the fact that their products are marketed via MLM schemes does not tarnish the Olympic Marks because MLM is a lawful business structure expressly recognized by the Federal Trade Commission. Id.

In reply, plaintiffs argue that defendants' expert survey "plainly did not test for the more general consumer connection at the heart of a blurring claim." Reply at 25.

"Courts recognize two principal forms of dilution; tarnishing and blurring." Kaisha v. Nat. Health Trends Corp., No. 04-cv-09028-DSF-E, 2005 WL 1041112, at *4 (C.D. Cal. Jan. 10, 2005) (internal citation omitted). "Blurring occurs when a defendant uses a plaintiff's trademark to identify the defendant's goods or services, creating the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product." Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1326 n.7 (9th Cir. 1998) (internal citations omitted). "Tarnishment occurs when a famous mark is improperly associated with an inferior or offensive product or service." Id. (internal citation omitted). "To assess dilution by way of blurring, courts look to "(1) the degree of similarity between the marks; (2) the degree of distinctiveness of the famous mark; (3) the extent to which the owner of the famous mark is engaging in substantially exclusively use of the mark; (4) the famous mark's degree of recognition; (5) whether the user of the mark intended to create an association with the famous mark; and (6) any actual association between the two marks." Monster Energy Co. v. BeastUp LLC, 395 F. Supp. 3d 1334, 1365 (E.D. Cal. 2019) (citing 15 U.S.C.A. § 1125(c)(2)(B)). "This test is strikingly similar to the test for likelihood of confusion under traditional trademark infringement analysis." Airwair Int'l Ltd. v. Vans, Inc., No. 5:12-cv-05060-EJD, 2013 WL 3786309, at *7 n.1 (N.D. Cal. July 17, 2013). The Ninth Circuit has stated that a dilution claim is subject to the same analysis whether it is brought under the Lanham Act or under section 14330 of California's Business and Professions code. Jada Toys, Inc. v. Mattel, Inc., 518 F.3d 628, 634 (9th Cir. 2008).

Here, the Court finds that plaintiffs are likely to succeed on their dilution by blurring claim because defendants have marketed their products using the OlyLife Marks alongside the Olympic Rings or the word "Olympic" and because defendants have reinforced customers' association of the parties' marks by explicitly highlighting their similarities through advertising materials. See Ex. E ("OlyLife is derived from 'Living

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:26-cv-00126-CAS-KESx | Date | June 3, 2026 |
|---|---|---|---|
| Title | Comite International Olympique et al. v. Xiamen Olymate Import and Export Co., Ltd. et al. | | |

the Olympian lifestyle'. Everyone adores Olympic champions, and when they win, we sometimes shed tears of joy too!").

"To properly support a dilution by tarnishment claim, a plaintiff must establish that the famous mark will suffer negative associations as a result of the use of the similar mark." Pendleton Woolen Mills, Inc. v. Round Up Ass'n., No. 3:11-cv-592-AC, 2012 WL 2721856, at *7 (D. Or. July 9, 2012). "'Tarnishment' generally arises when the plaintiff's trademark is linked to products of shoddy quality, diminishing the value of the mark because the public will associate the lack of quality with the plaintiff's unrelated goods." Sony Computer Entm't, Inc. v. Connectix Corp., 203 F.3d 596, 609 (9th Cir. 2000) (internal citation omitted).

Here, the Court finds that there are "serious questions going to the merits" of whether plaintiffs are likely to succeed on their dilution by tarnishment claim, which can substitute for a showing of likelihood of success on the merits in the Court's analysis, assuming that "a hardship balance that tips sharply toward the plaintiff … [and] the other two elements of the Winter test are also met." Cottrell, 632 F.3d at 1132. Defendants market their products via multi-level marketing, which can be a lawful business structure. Nonetheless, given the similarities between MLM business models and illicit pyramid schemes, the Court finds that there are serious questions as to whether the Olympic Marks could suffer negative associations as a result of defendants' use of Olympic Marks in the course of their MLM business. See F.T.C. v. BurnLounge, Inc., 753 F.3d 878, 883 (9th Cir. 2014) ("Not all MLM businesses are illegal pyramid schemes. To determine whether a MLM business is a pyramid, a court must look at how the MLM business operates in practice."). At this stage, the Court lacks sufficient information to make such determinations. Moreover, as plaintiffs argue, because "[m]any of [defendants'] products make bold health claims that have not been evaluated or endorsed by the Olympic Parties," defendants' use of the Olympic Marks in advertising their products "create[e] a significant risk of reputation harm to the Olympics if these products fail to deliver on their promises." Mot. at 18. These uncertainties also raise serious questions as to the merits of plaintiffs' dilution by tarnishment claim.

For these reasons, the Court finds it appropriate to enjoin defendants from using the Olympic Marks in the course of their business.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:26-cv-00126-CAS-KESx | Date | June 3, 2026 |
|---|---|---|---|
| Title | Comite International Olympique et al. v. Xiamen Olymate Import and Export Co., Ltd. et al. | | |

### B.    Irreparable Harm

Plaintiffs argue that defendants' actions, "if allowed to continue, will both threaten the exclusivity of the Olympic Parties' critical sponsorship relationships and risk permanent damage to the reputation and goodwill of the Olympic Parties and the Olympic Movement." Mot. at 33. Plaintiffs argue that "[i]rreparable harm is presumed both for the Lanham Act and OASA claims." Id. Plaintiffs further argue that "OlyLife's actions tarnish the reputation of the Olympic Parties and Olympic Games by exploiting the Olympics' credibility to convince people to make health and business decisions. When those decisions do not pan out, consumers will associate their negative experiences with the Olympics." Id. at 34.

In opposition, defendants argue that plaintiffs' presumption of irreparable harm is rebutted by the fact that "Plaintiffs waited until January 6, 2026 to file suit—nearly four years—despite earlier awareness of OlyLife's activities," demonstrating that "Plaintiffs were in no rush to seek emergency relief." Opp. at 24. Moreover, defendants argue that plaintiffs have shown no actual harm because they "identify no lost sponsorship, no lost licensing dollar, no sponsor complaint, and no consumer-confusion complaint." Id. Defendants further argue that their voluntary remediation of their infringing activities and implementation of safeguards to prevent any recurrence of infringement substantially reduces the risk of harm to plaintiffs. Id. at 25. Finally, defendants argue that any remaining harm is compensable through damages. Id.

The Court finds that absent a preliminary injunction, plaintiff will likely suffer irreparable harm. Some of plaintiff's injuries may be compensable through monetary damages. However, absent an injunction, should defendants resume their infringing activities, plaintiffs will likely suffer an irreparable loss of goodwill and loss of control over their reputation because customers may continue to confuse the Olympic Parties and the Olympic Movement with defendants' products and business. Absent an injunction, plaintiffs will be denied their lawful ability to control who is allowed to be associated with the Olympics. See adidas Am., Inc. v. Skechers USA, Inc., 890 F.3d 747, 756 (9th Cir. 2018) ("'[E]vidence of loss of control over business reputation and damage to goodwill [can] constitute irreparable harm,' so long as there is concrete evidence in the record of those things.") (quoting Herb Reed Enterprises, LLC v. Fla. Ent. Mgmt., Inc., 736 F.3d 1239, 1250 (9th Cir. 2013)); San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm., 483 U.S. 522, 539 (1987) ("There is no question that … unauthorized

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:26-cv-00126-CAS-KESx | Date | June 3, 2026 |
|---|---|---|---|
| Title | Comite International Olympique et al. v. Xiamen Olymate Import and Export Co., Ltd. et al. | | |

use [of the word 'Olympic'] could undercut the USOC's efforts to use, and sell the right to use, the word in the future, since much of the word's value comes from its limited use. Such an adverse effect on the USOC's activities is directly contrary to Congress' interest."). Even if defendants have ceased some of their infringing activities,[9] this does not moot the need for injunctive relief. <u>Cherokee Inc. v. Wilson Sporting Goods Co.</u>, No. CV 15-04023 BRO EX, 2015 WL 3930041, at *4 (C.D. Cal. June 25, 2015) ("courts across jurisdictions have often found the voluntary cessation of infringing conduct insufficient to moot a *preliminary* injunction") (emphasis in original) (citing cases).

### C.    Balance of Equities

Plaintiffs argue that the balance of equities tips sharply in their favor because "[t]he irreparable harm to the Olympic Parties … outweighs any harm that OlyLife faces if enjoined from using the OLYLIFE and Olympic Marks." Mot. at 34. Plaintiffs argue that "OlyLife has only itself to blame for any hardship an injunction bestows because of its knowing adoption of the OLYLIFE Mark and brazen use of the Olympic Marks." <u>Id.</u> Plaintiffs further argue that because "OlyLife's U.S. business is in its infancy … any business interruption should be relatively minimal." <u>Id.</u> at 35 (citing cases).

In opposition, defendants argue that the balance of equities favor them because "Plaintiffs' sweeping injunction would effectively destroy a global business operating in good faith since 2022, forcing simultaneous rebranding across multiple countries, each with its own trademark, regulatory, and product-labeling regimes." Opp. at 27. Moreover, defendants argue that their diligence in promptly removing Olympic reference and implement compliance monitoring after being put on notice of their infringement "demonstrates that the equities can be balanced without destroying a lawful business." <u>Id.</u>

"The 'balance of equities' refers to the relative burdens or hardships to *parties*, while the public interest inquiry primarily addresses impact on non-parties rather than parties." <u>Conservation Cong. v. U.S. Forest Serv.</u>, No. 2:12-CV-02800-TLN, 2014 WL 5817206, at *4 (E.D. Cal. Nov. 6, 2014) (citations omitted) (emphasis added); <u>see also</u>

---

[9] In any event, as of June 1, 2026, the date of the hearing on plaintiff's motion, defendants do not appear to have ceased and removed all instances of their infringing conduct. <u>See</u> Exhibit BB-2 at 26; Ex. DD at 45-46.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:26-cv-00126-CAS-KESx | | Date | June 3, 2026 |
|----------|------------------------|---|------|--------------|
| Title | Comite International Olympique et al. v. Xiamen Olymate Import and Export Co., Ltd. et al. | | | |

<u>Cadence Design Sys., Inc. v. Avant! Corp.</u>, 125 F.3d 824, 829 (9th Cir. 1997) ("a defendant who knowingly infringes … 'cannot complain of the harm that will befall it when properly forced to desist from its infringing activities.'"). In this case, the Court finds that the balance of equities tips in favor of plaintiffs with regard to defendants' unauthorized use of Olympic Marks.

### D.    Public Interest

Plaintiff argues that "[t]he public has a strong interest in not being confused about whether OlyLife's products are endorsed or sponsored by the Olympics." Mot. at 35. They further argue that the public has an especial interest in stopping defendants' infringement of the Olympic Marks to "ensur[e] the development and safeguarding of the Olympic Movement and sport." <u>Id.</u> at 35 (quoting <u>SFAA</u>, 483 U.S. at 534).

Defendants argue that the public interest favors issuance of a tailored injunctive order. <u>See</u> opp. at 27-28.

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." <u>Winter</u>, 555 U.S. at 24. "An injunction that prevents consumer confusion in trademark cases . . . serves the public interest."). <u>Am. Rena Int'l Corp. v. Sis-Joyce Int'l Co.</u>, 534 F. App'x 633, 636 (9th Cir. 2013). The Court finds that a tailored injunctive order enjoining defendants' infringing activities would further the public interest by protecting plaintiffs' statutory and common law rights while ensuring that businesses may continue to use non-infringing marks in the marketplace and otherwise engage in lawful commercial speech. <u>See San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.</u>, 483 U.S. 522, 536-37 (1987).

### E.    Scope of Relief

Preliminary injunctive relief "must be tailored to remedy the specific harm alleged." <u>Lamb-Weston, Inc. v. McCain Foods, Ltd.</u>, 941 F.2d 970, 974 (9th Cir. 1991); <u>Winter</u>, 555 U.S. at 22.

"Defendants are prepared to consent to a preliminary order that would:

(i) prohibit use of the statutory words and any explicit reference to the Olympic Games or the Olympic Movement in connection with OlyLife products;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:26-cv-00126-CAS-KESx | | Date | June 3, 2026 |
|---|---|---|---|---|
| Title | Comite International Olympique et al. v. Xiamen Olymate Import and Export Co., Ltd. et al. | | | |

(ii) require the OlyLife Defendants to add a prominent disclaimer that OlyLife is not affiliated with, sponsored by, or endorsed by the IOC or the USOPC;

(iii) require the OlyLife Defendants to maintain ongoing compliance monitoring of distributor marketing materials; and

(iv) permit continued use of the OLYLIFE mark and logo."

Opp. at 26.

Defendants argue that such injunctive relief would "address[] every cognizable risk. It prohibits the Olympic-specific designations the OASA actually protects, eliminates any suggestion of affiliation through prominent disclaimers, and imposes continuing distributor-compliance obligations enforceable through this Court's contempt power." Id. They argue that the scope of plaintiffs' requested relief "goes far beyond their injury," and that their "seek[ing] to prohibit 'any trademark or trade name that begins with or incorporates the term 'OLY' … is untethered from the statutory rights Plaintiffs possess and would grant a monopoly over a common three-letter prefix Congress chose not to protect." Id.

In reply, plaintiffs argue that defendants' proposed injunction would not prevent irreparable harm because "[n]o court order can erase that OlyLife means 'Olympic Life' from distributors', customers', and the internet's collective memory," and that "the only way to prevent irreparable harm is to block use of the OLYLIFE mark altogether, along with the various OLY-formative marks in use by OlyLife's affiliates." Reply at 28. Plaintiffs also argue that "[t]his case presents a clear application of the 'safe distance' rule, as a lingering false connection with the Olympics is likely." Id. (citing cases). Plaintiffs argue that "if the OLYLIFE brand is allowed to stand, OlyLife's conduct would become a blueprint for any company looking to profit off the commercial magnetism of the Olympics: (1) establish an OLY-formative brand, (2) explain to anyone who will listen that OLY means Olympic, (3) once caught, promise not to use the Olympic Marks again, and (4) continue selling under the OLY-formative mark with the benefit of the already-established false connection that can be implicitly referenced in a number of creative ways." Id. at 29.

Plaintiffs also argue that defendants' the disclaimer component of defendants' proffered injunction would only further dilute the Olympic Marks because even if

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:26-cv-00126-CAS-KESx | | Date | June 3, 2026 |
|---|---|---|---|---|
| Title | Comite International Olympique et al. v. Xiamen Olymate Import and Export Co., Ltd. et al. | | | |

consumers understood that OLYLIFE was not associated with or endorsed by the Olympics, such understanding would, in and of itself, dilute the strong and distinctive image of the Olympics. See id. at 29.

The Court largely agrees with defendants as to the appropriateness of the scope of the injunctive relief they propose. As discussed, plaintiffs have been irreparably harmed and will likely continue to suffer irreparable harm should defendants continue to advertise and market their products using the Olympic Marks and by associating their products with the Olympics. However, plaintiffs are not likely to suffer irreparable harm simply by virtue of defendants' selling their products using the OLYLIFE or OLY-formative marks, stripped of any reference to the Olympics, because the use of such marks does not violate plaintiffs' statutory rights under the OASA nor does it constitute trademark infringement.

Although plaintiffs argue that "the first three letters of the **OLY**LIFE mark will forever carry a reminder of that false and poisonous connection" to the Olympics, Reply at 26 (emphasis in original), the Court is not persuaded. Defendants' expert survey indicates that consumers are not likely to associate "OLYLIFE" with the Olympics. Dkt. 60-9, Cohen Rpt. §§ V-VI. Nor does the Court find that enjoining defendants' use of the OLYLIFE or OLY-formative marks is appropriate at this time. See 4 McCarthy on Trademarks and Unfair Competition § 30:4 (5th ed.) (discussing the "safe distance" rule under which "a court has the discretionary power to enjoin an act, which if done alone would be legal, but when performed in the context of a totality of acts constitutes some form of infringement or unfair competition."). Should defendants continue to use their marks in an infringing manner in the future, plaintiffs may seek further injunctive relief from the Court. See Wolfard Glassblowing Co. v. Vanbragt, 118 F.3d 1320, 1323 (9th Cir. 1997) (noting that a trademark infringer "should have its conduct carefully scrutinized in future use and should not be allowed to claim the same leniency accorded a good faith user.") (citations omitted).

### F.     Bond

Under Federal Rule of Civil Procedure 65(c), after obtaining a preliminary injunction, the plaintiff must post a bond in an amount that would pay the costs and damages sustained by another party in the event that the court later determines that the bond should not have been issued. Fed. R. Civ. P. 65(c). District courts have broad

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                     **'O'**

| Case No. | 2:26-cv-00126-CAS-KESx | Date | June 3, 2026 |
|---|---|---|---|
| Title | Comite International Olympique et al. v. Xiamen Olymate Import and Export Co., Ltd. et al. | | |

discretion when setting the amount of the bond. GoTo.com. Inc. v. Walt Disney Co., 202 F.3d 1199, 1211 (9th Cir. 2000). Moreover, despite the seemingly-mandatory language in Rule 65(c), the Ninth Circuit has instructed district courts that they may dispense with the bond requirement altogether in certain circumstances, for example, when "there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." Johnson v. Couturier, 572 F.3d 1067, 1085 (9th Cir. 2009) (quoting Jorgensen v. Cassiday, 320 F.3d 906, 910 (9th Cir. 2003)). Similarly, when the plaintiff establishes a strong likelihood of success on the merits, the district court has the discretion to impose a "minimal bond or no bond at all." Van de Kamp v. Tahoe Reg'l Planning Agency, 766 F.2d 1319, 1326 (9th Cir. 1985).

Defendants argue that "[a]ny preliminary injunction [issued by the Court] must be conditioned on a substantial bond commensurate with th[e] costs" that defendants would incur if they are later found to have been wrongfully enjoined. Opp. at 28. Defendants argue that these costs are "substantial" and include those associated with "redesigning packaging, marketing materials, and websites across multiple jurisdictions; rebuilding disrupted distributor and customer relationships; and lost sales during the rebranding transition." Id.

In reply, plaintiffs argue that "a bond is not warranted because [they have made an] overwhelming showing of [their] likelihood of success on the merits." Reply at 32.

In this case, because plaintiffs have established a strong likelihood of success on the merits of their OASA and trademark infringement claims, the Court finds that imposing a bond is not necessary. See 2Die4Kourt v. Hillair Cap. Mgmt., LLC, No. SACV1601304JVSDFMX, 2016 WL 4487895, at *11 (C.D. Cal. Aug. 23, 2016), aff'd, 692 F. App'x 366 (9th Cir. 2017) (waiving the bond requirement in part because plaintiffs had established a strong likelihood of success on the merits). The Court's injunction enjoins defendants' clearly infringing uses of the Olympic Marks.[10]

---

[10] The Court notes that defendants agree that this limited injunction is appropriate. See Opp. at 26.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:26-cv-00126-CAS-KESx | Date | June 3, 2026 |
|----------|------------------------|------|--------------|
| Title | Comite International Olympique et al. v. Xiamen Olymate Import and Export Co., Ltd. et al. | | |

## V.      CONCLUSION

In accordance with the foregoing, the Court **GRANTS IN PART AND DENIES IN PART** plaintiff's motion for a preliminary injunction.

The Court **ORDERS** as follows:

(i) Defendants are enjoined from, for the purpose of trade or in commerce, using any explicit reference to the Olympic Games or the Olympic Movement, including, but not limited to, any trademarks registered by the Olympic Parties, the Olympic Rings symbol and the words "Olympic" and "Olympiad", or any combination or simulation of those words tending to cause confusion or mistake, to deceive, or to falsely suggest a connection with the Olympics.  Defendants shall remove all such references from any and all corporate-controlled websites, social-media accounts, and marketing materials.

(ii) Defendants are enjoined from, for the purpose of trade or in commerce, using any trademark, trade name, sign, symbol, slogan, or insignia falsely representing an association with, or authorization by, the Olympic Parties.  Defendants shall remove all such references from any and all corporate-controlled websites, social-media accounts, and marketing materials.  This prohibition includes defendants' use of the terms "Champion's Choice," "Athlete's Choice," or any similar language that falsely suggests OlyLife's association with the Olympic Parties or the Olympics.

(iii) Defendants shall promptly direct all of their distributors to immediately refrain from using any Olympic-related imagery, symbols, or language, as specified in (i) and (ii) above, in connection with the marketing or sale of OlyLife products.

(iv) Defendants shall maintain ongoing compliance monitoring of their third-party distributors' conduct and take appropriate measures in the event of their noncompliance with this order, including terminating their contractual relationships with noncomplying distributors.

(v) Defendants shall promptly add a prominent disclaimer on all of their websites and social media sites, and on all of their products and marketing materials, that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:26-cv-00126-CAS-KESx | Date | June 3, 2026 |
|---|---|---|---|
| Title | Comite International Olympique et al. v. Xiamen Olymate Import and Export Co., Ltd. et al. | | |

OlyLife is not affiliated with, sponsored by, or endorsed by any Olympic Party or the Olympics.

(vi) Defendants are enjoined from using, registering, selling, or transferring, any domain names or social media accounts or handles accessible from the United States that use the Olympic Marks or otherwise suggest that OlyLife is affiliated with the Olympics or an Olympic entity.

The Court **DENIES** without prejudice plaintiffs' request to enjoin defendants from using the OLYLIFE and OLY-formative Marks, including but not limited to, OLY NATION and OLY PROCESSING.

The Court **DENIES** without prejudice plaintiffs' request to enjoin defendants from using, registering, selling, or transferring, any domain names or social media accounts or handles accessible from the United States that feature an OLYLIFE or OLY-formative mark.

The Court directs counsel for plaintiffs to serve and file a proposed form of preliminary injunction that is consistent with this Order.

IT IS SO ORDERED.

| | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |